## Barning, Appellant, *v.* Barning.

*Divorce—Domicile—Residence—Intention.*

1. The expressed intention of a woman before marriage that her husband's domicile shall not be hers, even though assented to by him will not prevent her from acquiring at marriage the domicile of her husband in another state, and if she goes with her husband to the state of his domicile, and there cohabits with him, and subsequently returns to Pennsylvania, she will have no standing in a suit for divorce until she has maintained an actual bona fide residence in Pennsylvania for the statutory period of one year from the date of her return to the state.

*Divorce—Amendment—Residence—Domicile.*

2. Where a libel in divorce by a wife alleging cruel and barbarous treatment is filed before the expiration of one year from the date mentioned as the beginning of the wife's legal residence in Pennsylvania, and an amendment is filed alleging an earlier date, the date of filing the amendment cannot be considered as the true date in computing the year's residence of the libelant.

3. The words of the statute are plain, and not open to a construction which would make the date of an amendment of the libel, instead of the date of filing the libel, the period prior to which the year's residence is to be computed.

Argued Dec. 20, 1910. Appeal, No. 207, Oct. T., 1910, by plaintiff, from decree of C. P. No. 1, Phila. Co., March

Term, 1909, No. 7, dismissing libel in divorce in case of Ida W. Barning v. Harry Barning.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Libel in divorce.

Exceptions to report of Maurice Bower Saul, Esq., master.

The court in an opinion by BRÉGY, J., dismissed exceptions to the master's report, and in accordance with the recommendation of the master, dismissed the libel.

*Error assigned* was decree dismissing libel.

*Oliver E. Shannon,* for appellant, cited as to domicile: Reed v. Ketch, 1 Phila. 105; Lesh v. Lesh, 13 Pa. Dist. Rep. 537; Dorsey v. Dorsey, 7 Watts, 349; Hollister v. Hollister, 6 Pa. 449; Colvin v. Reed, 55 Pa. 375; Hodgson v. DeBeauchesne, 12 Moore, C. P. Reps. 285; Lyon v. Lyon, 13 Pa. Dist. Rep. 623; Hamilton v. Dallas, L. R. 1 Ch. Div. 257.

Cited as to the amendment: Hancock v. Hancock, 13 W. N. C. 29; Clayburgh v. Clayburgh, 15 W. N. C. 365; Ames v. Ames, 7 Pa. Superior Ct. 456; Carn v. Fillman, 10 W. N. C. 152; Kay v. Fredrigal, 3 Pa. 221.

No printed brief filed for appellee.

OPINION BY RICE, P. J., March 3, 1911:

The libel in this case, based on allegations of indignities to the person and cruel and barbarous treatment, as grounds of divorce, was filed on November 17, 1908.   The subpoena was personally served, and the respondent appeared and filed an answer.   It appears from the excellent report of the master, which is fully sustained by the evidence, that the parties were married in the city of New York on May 25, 1908; that thereafter they cohabited as husband and wife in the city of Brooklyn, New York,

until the end of June, 1908, when the libelant returned to
her parents in Philadelphia; and that on September 6,
1908, she returned to her husband in Brooklyn, where they
cohabited as husband and wife until September 9, 1908,
when she left him and returned to her parents in Phila-
delphia, with whom she continued to reside until the
hearing. At the time of the marriage the libelant was a
citizen of Pennsylvania, and the respondent was a resident
of the state of New York. So far as appears, he never was
domiciled in Pennsylvania. Under the evidence, assum-
ing for a moment that the libel was not prematurely filed,
the case falls within the purview of sec. 1 of the Act of
June 20, 1893, P. L. 471, which authorizes the courts of
common pleas of this commonwealth to entertain jurisdic-
tion of cases of divorce for certain specified causes, "where
it shall be shown to the court by any wife that she was
formerly a citizen of this commonwealth, and that having
intermarried with a citizen of any other state or any for-
eign country, she has been compelled to abandon the hab-
itation and domicile of her husband in such other state or
foreign country by reason" etc. But the section contains
the proviso, "that no application for such divorce shall
be made, unless the applicant therefor shall be a citizen of
this commonwealth, or shall have resided therein for the
term of one year prior to filing her petition or libel as pro-
vided by the laws of this commonwealth." According to
the foregoing statement of facts, the residence and dom-
icile of the libelant, for a considerable part of the year
immediately prior to the filing of the libel, were, prima
facie at least, in New York. To meet this difficulty the
counsel for the libelant cites her testimony to the effect
that, when she became married to the respondent and took
up her residence with him in New York, it was her inten-
tion not to abandon her Pennsylvania domicile, but to re-
turn to it. We quote her testimony: "I went over there
to my husband, always with the intention of returning
home to Philadelphia. At the time we were married I
told him that the only way I would live was if he would

return with me to Philadelphia and he said that he would just as soon as he could find a job here, and I brought him over to Philadelphia with me in June to my residence, and he seemed to be very well pleased with a room I had there at my home, and he said that we could take my room to live in until he could get a place here and a home of our own. Of course we hadn't decided upon that yet. With that intention I was married, and always had the intention of returning here. I have all my friends here; all my friends in the church where I still belong. He seemed satisfied about that, but before he could keep his promises his abuse to me was so bad that I was compelled to leave him both times." It is clear that his promise to go to Philadelphia and take up his residence there as soon as he could find a job did not have the effect of changing his domicile. That remained in New York and became her domicile upon her marriage and cohabitation with him: Dorsey v. Dorsey, 7 Watts, 349; Hollister v. Hollister, 6 Pa. 449. Following out the theory of an identity of person, the law fixes the domicile of the wife by that of the husband and denies to her during cohabitation the power of acquiring a domicile of her own separate and apart from him: 14 Cyc. of Law and Procedure, 846. This statement of the general rule is sustained by abundant authority. Her mere intention that his domicile should not be hers, even though expressed to her husband and assented to by him, could not alter the fact or detract from the legal consequences growing out of their cohabitation in New York in the relation of husband and wife. To hold that her intention to consider Pennsylvania her residence was under the circumstances equivalent to actual bona fide residence in the state, would defeat the manifest purpose of a statutory provision, which ought not to be refined away by such subtlety of reasoning. For it is to be remembered that the statutory prerequisite of a year's residence in the state is not in the nature of a personal privilege or safeguard which the parties may waive or the court in its discretion may dispense with; it is an essential to jurisdiction over

the subject-matter. We all concur in the master's conclusion, which is thus stated: "The master is of opinion that not until the libelant in this case on September 9, 1908, finally left the respondent in New York to return to her home in Philadelphia, on account of his cruel and barbarous treatment, and personal indignities offered to her, could she have a separate domicile under the law. A year's residence, therefore, must be computed from September 9, 1908, when the libelant legally resumed her domicile."

On October 26, 1909, by leave of court, the libelant filed an amendment of the libel as to paragraphs 2 and 3 thereof, alleging, as to paragraph 2, that at the time of the filing of the amendment the libelant had been a citizen of the state of Pennsylvania and had resided therein for the period of one whole year previous to the filing of the amendment; and, as to paragraph 3, alleging that the cruel treatment by respondent and indignities offered by him to libelant's person forced her to withdraw from his house and family on or about September 9, 1908, instead of October 25, 1908, as set forth in the libel originally filed. It is argued that in computing the year's residence the date of filing the amendment should be considered as the true date. Counsel rely upon the case of English v. English, 19 Pa. Superior Ct. 586, as authority for this contention. But upon a moment's reflection it will be seen that it does not sustain him. There the court granted the libelant "leave to withdraw from the record the libel heretofore filed in this cause and file the within libel as an amended libel therein." The respondent filed an answer to the amended libel, denying some of its allegations, and a master was appointed, before whom the libelant's testimony was given, the respondent appearing at the hearing by counsel. This was the filing of a new libel, and not a mere amendment of the libel already filed. The distinction, as the learned master says, is not one of form, but of substance, and an amendment to a libel which the court has no jurisdiction to entertain cannot avail the libelant. The words of the statute are plain and not open to a con-

struction which would make the date of an amendment of a libel, instead of the date of filing the libel, the period prior to which the year's residence is to be computed.

The evidence fully sustains the charges as to indignities to the person and cruelty, but for the reasons above stated the court was without jurisdiction and therefore was right in dismissing the libel.

The decree is affirmed.